Please call the next case. Model 9-3277, Roboto-Skwerk v. Mission Control Systems. Counsel, you may begin. My guest, may it please the Court, Mr. Popoletti. My name is Matt Felcher and I represent Tom Worek. I just told you, if I may have a few minutes for rebuttal, please. You will. Thank you, Judge. Judge, Mr. Worek, Justice's Mr. Worek is asking today that you reverse the Commission decision finding that no accident occurred in his case for the following reasons. The predurable and immutable facts out of this case is that Mr. Worek sustained a serious back injury. That will get our attention. How do you describe that again? Predurable and immutable? Okay. Per is the Latin throughout, durable, so it lasts forever. But the one fact that we learned from this case is that Mr. Worek had a serious back injury. There's another immutable principle running through this, and that appears to be, unless I missed something here, that the Commission and the arbiter found that your claimant was lacking in credibility. Yes, Judge. Since that is, as we all know, uniquely within the province of the Commission, doesn't that give you a very high hurdle to overcome? Yes, Judge, but I will overcome it, I believe. Tom was hired in April of 2007 by Mission Control Systems. Tom Worek there assembling electrical panels. It's a job which requires lifting metal panel boxes which weigh between 100, 150, and 200 pounds, depending on which witness we listen to. And he worked there, according to those witnesses, the only basis for dispute in this case, the co-worker testimony, for approximately 28 months without any apparent back injury or problems, until, as the arbitrator found, in August of 2009, Tom had a serious back injury. The finding of a serious back injury is supported by the medical records, including the Section 12 examination, in this instance also by Dr. Bernstein, the MRI showing a disc herniation, and is consistent with the competent medical evidence offered by Mr. Worek into evidence in this case. It's consistent with the adjuster from Hartford who came and testified that she conducted an investigation, that she interviewed these co-workers, that she read the medical records, she read the Section 12 report, and, in fact, this claim was accepted. On the date of the trial, the adjuster testified that this claim was still accepted as compensable, and most importantly, the Respondent stipulated or settled the issue that Tom's present condition, the serious back injury, was related to the alleged accident. Well, let me ask you this. Wasn't there evidence then subsequently emerged that your client was being treated for back pain for a couple of years prior to this incident? Wasn't that in the record as well? Yes, Judge. But once the Respondent or the employer settles the issue, they sign the stipulation sheet, and I believe the Ingrassia case just came down recently. I don't believe that Walker is going to be overturned in this case. And it stands for the proposition that the employer can settle or stipulate to certain issues. In reliance upon that stipulation or that settlement, Mr. Vorek makes certain decisions, among them not to call Dr. Bernstein to testify, not to call the treating physician to testify, and as to when the Respondent stipulates that the basis for the dispute or denial is co-worker testimony, and that co-worker testimony is complete, Mr. Vorek makes certain decisions regarding the conduct of the trial in reliance upon that prior stipulation, that settlement of the issue, in reliance on the testimony that came before. So we decide not to incur the expense of taking a doctor's deposition, because why should we do so when the Respondent or the employer has settled the issue? Once the arbitrator found, which was supported by the medical records, that Mr. Vorek sustained a serious back injury, and the Commission affirms the serious back injury, and the Respondent settled that the serious back injury is related to the alleged accident, why are we here? We'll probably find out shortly. I hope so. And I suggest ñ What is the stipulation that you're speaking of? Yeah, Justice Hoffman, in the request for hearing form. Petitioner claims that on the above date here she sustained accidental injury or was last exposed to an occupational disease that arose out of the course of her employment, and the response is disputed. The next stipulation? The next stipulation really says the petitioner claims that his condition of MPA was causally connected to his injury or exposure, in which case that's agreed. I suppose he does claim that. But the fact of the matter is they've denied that he sustained an accidental injury that arose out of the course of his employment. That's hardly a stipulation. Judge, if we look at the reasons why both the Respondent denied the claim, which was based on co-worker testimony, we review the co-worker testimony, and then we review the clear records that are in the medical evidence. We listen to the testimony of the adjuster, and then we conclude that, in fact, there has been a serious back injury. And then we peel away all the reasons as to why the arbitrator found that there was a serious back injury, and they all relate back to this present condition related to the accident. Now, if we look at the further explanation of the commission as to the reasons why it further undermines the claim, as they say, all the reasons set forth were things that concern the preexisting condition. It's the position of Mr. Vork that, in fact, they had stipulated that the present condition is, in fact, related to the alleged accident. Well, did you answer the question of the credibility issue? If the commission doesn't believe the claimant, isn't that part of the analysis, sir? It is, Judge. It absolutely is. And I want to be forthright and acknowledge that that's what it does back say. However, the reasons or the explanations that undermine the credibility of the petitioner all relate to issues having to do with this preexisting condition. For example, forms filled out for health insurance. I submit that that's not relevant to the inquiry at hand, and that sort of leads us to our next subject, which, in fact, works in tandem. And I was struck as we came into the building today, and the words on the wall behind us, and it says, here the other side, in Latin. And here the other side has evolved over the course of history into what we consider the natural law or the right to due process. And in this instance, Mr. Vork was deprived of due process when the arbitrator conducted this case as if it was a motion for summary judgment or a motion to dismiss. As the Court may recall, prior to 2005, the Respondent's Bar didn't have a means to bring a case to trial pursuant to 19B. In this instance, the Respondent filed what is commonly called reverse 19B. At that time in January of 2010, it wasn't clear whether that was going to be an independent motion that was going to be presented on its own or if that forced the parties to a trial. It's my present position that it forces the party to try the case, and then it shifts the burden to me to put on my case, put on my evidence, and then have a finding. Well, your opponent, I believe, argues in her brief that the employer had the burden to prove that your client was not entitled to benefits. Who had the burden here? In January of 2010, it wasn't clear who had the burden of proving the case. I'm of the position now that the filing of a 19B petition by the employer, or what's called a reverse 19B, forces the claimant to put on their case. The arbitrator, however, at that time found that it was Respondent's motion and then proceeded to conduct the trial as if it's their motion to dismiss or 615-619 motion. So the Respondent, or the employer, opened, called witnesses, called my client as an adverse witness, and flipping the process of due process upside down and then creating this illusion that my client somehow lacks credibility. But if you look at the actual reasons for the lack of credibility, the basis set for... Did your client get to put on his case in chief during the arbitration proceeding? Judge, this matter appeared before the arbitrator on my petition for penalties and Respondent's 19B. But you didn't answer my question. I'm sorry, Judge. Did your client get a chance to put on his case in chief before the arbitrator? The... I called two witnesses. So I think that the answer would be yes. So how was he deprived of due process? Merely because of the order in which the proceeding took place? The order of the proceeding that took place? The basis set forth for why the case was to be denied? Let's not mix up things. Yes, Judge. How does the order in which the proceeding took place affect your client's right to due process? When the burden of proof is allocated to the Petitioner, and yet the Petitioner doesn't get to conduct the trial, call his witnesses, open and close, I believe it's a violation of my client's rights to due process. Well, if you didn't get a chance to put on a case, yeah, you'd be right, but you did. And second of all, if they're contending that they bring a petition, a reverse petition saying he's not entitled to any benefits, let him prove it. And evidently they did, because you couldn't even convince Commissioner Mason that your client was entitled to benefits. That's pretty hard to do, isn't it? Well, I would submit that if we look for the reasons as to why my client was found not to be credible, it all relates back to his failure to explain why he was late that day, how he felt over the weekend, some information about a treatment with a doctor in 2008 with a doctor at Hinsdale Orthopedics. And I submit to you that there really isn't any dispute that Mr. Vorek was injured and that the Section 12 examination indicates that he was injured. The adjuster reviews the medical records and concludes that the case is compensable. We appear the reason that the case appeared on a petition for initial petition for penalty in front of the commission were due to four months of delay in accepting the case. My client had an injury in August of 2009. One check went out in the middle of August. One check went out at the end of September. One check went out at the end of October. My client appeared at the commission, had to remove his shirt, albeit voluntarily, so that Respondent's Counsel could inspect his back for the appearance of surgical scars. There was some sort of rumor that my client had had a prior back surgery. And if you look to the letter sent to Dr. Bernstein with the Section 12 report, it indicates that we became suspicious of this claim because of a prior back surgery. So Mr. Vorek comes, takes off his shirt and says, I have no prior back surgery. Yet the letter still goes to Dr. Bernstein, this guy had a prior back surgery. Dr. Bernstein apparently, according to the adjuster who read the Section 12 report, concluded that the case was compensable. I filed my own request for penalties for this four-month delay in what I felt was bad faith management of the claim for this rumor being spread that my client had a back surgery. The case appeared in January 2010 for trial on my petition for penalties, and lo and behold, the Respondent filed their own reverse 19B at that time. The basis set forth for the reverse 19B, as you can see on the request for hearing form, indicates clearly co-worker testimony. The arbitrator says we're going to conduct the trial in the following way. Employer, call your witnesses. So the employer calls his witnesses. I hear the co-worker testimony. There's nothing there. They don't see anything. They don't know anything. And so in reliance upon that prior testimony, and then the adjuster coming to testify, she's reviewed everything, interviewed these same co-workers, reviewed the medical records and the Section 12 examination, and I conclude that the case is compensable. And the stipulation on the request for hearing form that in my position removes or binds them to the present conditions related to the accident. So there isn't any reason to have that line on this form if it isn't to address the issues in dispute. And whether the Petitioner claims that he, that his, alleges that he had an accident on that day, that's, there's no reason to have that line on the form. It's, these are the stipulations, and this, these are the stipulations and the issues in dispute, and if we look on page 4 of the transcript from the trial, it indicates, the arbitrator indicates these are the issues that are in dispute. And as we, as we read the issues that are in dispute, causal connection or the present condition of the Petitioner related to the alleged accident isn't one of the issues that are in dispute. So I, I submit that once there, once there, if there was a finding of no injury, if there's nothing wrong with Mr. Ward, then there, he has no claim. But there was no dispute that he had an injury. They stipulated that the injury was related to the accident. I feel it was a sort of a defense of the Petitioner's penalties. And lo and behold, the, the arbitrator conducts the hearing as if, as if it's their motion to dismiss, and then I, I wind up with an arbitration worth finding no accident. And I just submit that if we peel away all of these reasons or the explanations of why my client is not credible, that as we get down to the meat of the matter, we'll see that there, that the manifest weight of the evidence and in fact the opposite result is clear and apparent from the record, on top of the procedural errors that occur. Thank you, Counsel. Thank you. Counsel, may you respond? Certainly. Good morning, Justices of the Counsel. May it please the Court. Elizabeth Capoletti on behalf of the appellee. As I'm listening to Counsel's argument, I think the first thing that jumps out to me is that the entire issue in dispute was accident. I mean, that, that was the entire issue in dispute, accident. And the Commission specifically found that the Petitioner did not sustain an accident on that day. It's a special question. What do you make of this? He's placing a great deal of emphasis on this form. He's apparently interpreting it in a manner, I presume, differently than you. He's saying that basically the stipulation took these issues off the table. What is your response to his interpretation? Well, I think he combines that argument to the stipulation as to causal relationship. I mean, it's clear from the form that the Respondent, the employer, disputed accident. It's clear from the form that the employer disputed accident. The form doesn't also indicate that the employer did stipulate a causal relationship. If you find an accident, you stipulate the causal connection, but it was clear they were placing accident issue. Absolutely. Or they wish to contest that. Correct. I mean, there's no question that accident is in dispute. And frankly, I would say to you that the question as to accident then subsumes this whole issue as to causal relationship. It's not relevant. No accident ever occurred. So how can there be a causal relationship to an injury where the Commission specifically found that there was not an accident which led to a back injury? I think that that's where we're parsing terms here. I mean, does he have a bad back? I think the Commission indicated, yeah, they thought he showed up to work with a bad back and that he basically was not credible, that he wasn't truthful, that they did not believe that an accident ever occurred. I mean, they just simply did not believe the claimant when he testified. Let me ask you this. Sure. In answer to this question, we pointed out the defects he believes in your side of the  Correct. Did the claimant ever testify as to his activities in days leading up to the accident? Did he ever testify he was pain-free? Did he ever provide any testimony to that? Not really. Not any specific testimony. In fact, I think the Commission highlights that in their decision as to not only do they adopt the arbitrator's credibility findings, they go on to say, here is specific other evidence that we feel places his credibility into question. And one of the facts that they, in fact, noted, I believe, was the fact that there was no explanation, as you're speaking to. I think that they testified that the back felt good when he applied for work for the respondent, but then a few months before, he saw Dr. Zendrick for problems with his lower back. He also told that he didn't quite explain why it was he came to work with a back injury. I mean, that he called off work on the day afterwards but gave no explanation, didn't talk about a back injury, and didn't actually report a back injury until the second day. So I do believe that the Commission, in fact, had problems with his explanation as to his preexisting back condition. But their main focus was on the credibility and the fact that they just simply did not believe the claimant when he said an accident occurred. And I think the Elliott case is directly on point. It is the Commission's function to determine whether or not an accident arises out of and in the course of the employment. But even before you get to whether or not an accident arises out of and in the course of the employment, it assumes an accident occurred. And in this case, the Commission and the arbitrator specifically did not believe the claimant that an accident occurred. So the brief counsel argues perhaps he was not believed because he was denied due process because of the reverse procedure here. What's your response to that? Well, first my response to that is in making that argument in his brief counsel never supports, you know, cites to any case law. But my second response to that would be the veracity of the claimant, his credibility falls upon his truthfulness, not about when he testifies. You know, his truthfulness is determined by whether or not he's being truthful under an oath, not whether or not he has an opportunity to go first or go second. I mean, I don't think that that is determinative as to truthfulness. That's just, in fact, a process as to when a court is going to allow the evidence to be brought into trial. And I think it's submitted that that is within the discretion of the arbitrator. And this was, in fact, a consolidated hearing. And I also would submit to you at the time of trial, counsel for the employer said to the arbitrator, how would you like us to do this, judge? We're here. And the claimant made no objection as to the proceedings at that time. They never said, hey, we want to go first. Hey, we think this is a fundamental violation of our due process rights. They never mentioned anything at the time of trial. And, in fact, the employer's counsel solicited from the arbitrator, how would you like us to proceed? And the arbitrator did say, hey, because it's your motion, employer, you can go first. Now, and I was — There wasn't any discussion at that time about who had the burden of proof, I guess, though, was there? Specifically on the record as to whose burden of proof it was, no. I mean, the discussion was, employer, this is your motion. Well, and clearly the arbitrator said it was the Petitioner's burden of proof, because in their decision, in the arbitrator's decision, he says, the burden is on the party seeking an award to prove by a preponderance of credible evidence, et cetera, et cetera, et cetera. So it is a situation, at least before the arbitrator, where the claimant didn't get the — wasn't allowed to go forward with the evidence, but was held to the burden of proof. And the commission adopted that. Well, I would say that the claimant was allowed to go forward with their evidence. They, in fact, did present their case in chief. But at the time of trial, they did not actually do a request for hearing at that time of trial. In fact, what was done at the time of trial was just a petition for penalties, and it was the employer's request for trial. So you're saying the arbitrator was wrong, you had the burden of proof. Correct. And you meant it. Correct. Relative to our petition. I mean, and the statute is very clear relative to the 19B. It says, employers, you can petition before the commission as long as you continue to pay TTD benefits, and then you can go before the commission and say, hey, we want a hearing to find out if we are obligated to continue to pay these benefits. And so, yes, we had a motion before the commission where it was our burden to prove, no, we don't need to keep paying these temporary total disability benefits and our medical expenses. And also, as I said in my brief, I do think that the Supreme Court, relative to consolidated matters, is on point in the sense that it then is in the discretion of the trial judge as to determine how you proceed forward with presentation of the evidence. We really have more than just an order of proceedings question here. The two of you differ on who had the burden of proof. Well, I mean, I guess I'm not sure. We did have a burden of proof relative to our motion, correct? Correct. And I certainly can't say to you that the petitioner doesn't ultimately have a burden of proof when he has to establish whether or not he, the claimant rises out of the course of the play race. You said in your brief that the employer had the burden of proving that he was not entitled to benefits. That's correct. However, the arbitrator in deciding the case said the burden was on the petitioner to prove that he was entitled to an award. That's different than just order of proceedings, isn't it? Well, it has to do with the burden of proof, correct, but I think the case law indicates that when both parties have the burden of proof that it's up to the trial court in their discretion to thereafter do the order of proceedings. I mean, I think that the case law is very clear on that, that it becomes within the trial court's discretion when both parties do, in fact, have the burden of proof. Also ---- Okay. How did both parties have the burden of proof here? I mean, he brought up penalties. I mean, you know, he had the burden of proof on his penalties, but he didn't file a 19B, right? Correct. It was your 19B. That's correct. It was his request for hearing. I mean, I'm assuming that based upon the questions from you relative to how the commission in fact worded their decision relative to burden of proof. And I think the case law was also clear that the trial court only abuses its discretion if the claimant or the plaintiff is not allowed an opportunity to impeach witnesses or support the impeached witnesses or, you know, to respond to points brought up by the other side. And I would say in this case clearly everyone had an opportunity to bring out their case before the arbitrator. So there's really no discretionary abuse or due process violation as to how it was that the trial unfolded before the arbitrator. And really this is a manifest way of the evidence question. And it's really uniquely within the province of the commission to do that, to judge the credibility of the witnesses and to make determinations as to how to afford the weight of the evidence. And in this case I would submit to you that there's more than sufficient evidence to support the commission's finding that the claimant was not credible and was not truthful in his testimony as to accident. I mean, specifically we have the testimonies of Mr. Palumbo, we have the testimonies of Mr. Chin. We have the testimonies of Mr. Tolan. I mean, there's no question that the claimant testified that he came to work, he lifted these panels, and that's what his accident was which caused his back injury, was lifting these panels. But Mr. Palumbo was with him at the time and he did testify that, yeah, they did lift panels on that day, but he never observed any type of accident. He never saw the claimant call out in pain. He's with the claimant the rest of the day, never complained of any back problems. And in fact, Mr. Palumbo testified that there was a conversation that he had with the claimant approximately two months later where the claimant came to him and specifically said he was going to need me on this one. Mr. Palumbo testified that it was his interpretation that the claimant was basically asking him to lie for him in court relative to the occurrence of an accident. Now, this is also coupled with the testimony of Mr. Chin. The claimant specifically testifies that he was out on a break with Mr. Chin, his supervisor, and when he tried to stand up, he grabbed his back in pain and apparently Mr. Chin screamed out, what expletive happened to you? And the claimant advised him at that time relative to his back accident, his injury. Mr. Chin specifically denied that. He said that never happened. I was never there. In essence, this is a credibility question. Absolutely. This is all a credibility question. Who did the commission believe? And all four of them, including Commissioner Mason, just simply did not believe the claimant. So the other issues as to whether or not there's a stipulation, as to whether or not we're talking about a judicial admission as to the presentation of the order of proofs are all subsumed by this question of accident, which is simply a credibility question that the commission and the arbitrator specifically found the claimant not to be credible. And the arbitrator making this finding, in fact, specifically noted in his decision not only did he not find him truthful, but he said I witnessed his mannerism, I witnessed his responses, and all of which calls his credibility into question. And he specifically notes that in the decision. I mean, this is a decision which is very specific on the fact the claimant just was not truthful. So relative to your question I think you had asked me earlier regarding the stipulation, I don't really think it's relevant as to the causal connection stipulation and that we don't really need to get into the discussion of Walker and whether or not stipulations bind the commission and how they bind the commission because I think all of that is subsumed by the fact that the commission merely found that an accident never occurred. So I would respectfully request that this honorable court affirm the decision of the commission. Thank you, counsel. Counsel may reply. The defense of the case is that Mr. Vorek wasn't injured. The coworkers testified that he wasn't injured. No accident, that no accident took place. No one is disputing the fact he may have a bad back. The question is where did it come from? Right. But the defense of the case is that there's nothing wrong with him. And I misspoke earlier. No, the defense of the case says he never had an accident at work. Okay. He lied when he said he did. Right. And that's the defense of the case. Okay. But I misspoke earlier when you asked me about the request for hearing form because as I relooked at the actual commission decision on the very last sentence of the first page, it says the commission acknowledges that the respondent stipulated causation but finds the stipulation to be without significance. And so now we're back to Ingrassia, Walker, that there is a stipulation of causation. Well, the fact of the matter is they denied that the event ever took place. And they denied that in the stipulation. Right. But the basis for the same was that the petitioner offered no account of the activities he engaged in during the weekend preceding the date. I submit to you that that issue has been settled by the causation. Petitioner did not indicate how his back felt when he arrived to work on August 3rd. I submit to you that that information was not elicited because of the stipulation. Petitioner testified he did feel good when he applied there. And then there were some dispute about it. Are you trying to tell us that during this entire hearing, you didn't know that they denied that he had any accident at all? No, I knew that they had denied the accident. But the basis for denial was co-worker testimony. And if you look at the co-worker testimony, it basically is that there's nothing wrong with it. Chin said he was a lawyer. Right. Chin also said that he didn't see anything. Chin also said that he didn't learn of the accident, that he doesn't know where he learned of the accident. And on cross-examination, he said he learned of the alleged accident from Scott Medford on the day of the accident. Chin's basic testimony is that I don't know anything. Toland's testimony, that the arbitrator found to be so persuasive, was that Mr. Voort poked his head and said, how's your back? And Mr. Toland concluded that that was a suspicious conversation. Mr. Palumbo came and testified. Mr. Palumbo worked there for four years. His boss is sitting across from him. He's the only one who admitted that he was compelled to be there that day. And they said to him, did you see anything? And he said, I didn't see anything. I submit to you that once we peel off the bases. Sir, he was 25 feet away from the petitioner throughout the entire day, saw absolutely nothing. What was the petitioner's statement? How did the accident happen? He was lifting a panel. With who? With Mr. Palumbo. And Palumbo said he never saw that. Mr. Palumbo, at the time of the trial, said I didn't see anything. Yeah. How could he not see it if he was lifting the panel with him if it happened? Well, Mr. Palumbo's boss is sitting right there. And your guy could get a lot of money. So now the question becomes, who are they going to believe? You're suggesting that because his boss is sitting across the table from him, he has a motivational eye? Mr. Palumbo is the Sergeant Shultz of the Mission Control Systems. He sees nothing. Is that in the record somewhere? He's a Sergeant Shultz? Well, he doesn't see anything. He doesn't know anything. And, in fact, if you look at the cross-examination, I said basically the only thing you know of that day is that Mr. Palumbo came in at 9 o'clock and left early. You know anything else? No, I don't know anything else. And that's the extent of it. So if he doesn't know anything, I submit to you that that's not a valid basis for denying the man's claim. When the adjuster comes in and testifies that it is a compensable claim, an arbitrator makes it right so the commission acknowledges that the Respondent stipulated causation. Well, you'd be very foolish in this day and age of penalties if you're an employer and you've got a claimant claiming to have been injured on a specific date and not paying TTT until you get a finding from the commission that says you don't have to pay it. Because if the commission finds against you, you're going to get whacked with penalties. You're going to get whacked with attorney's fees and everything else over there at the commission. So I think the insurance company was very smart in doing what it did. It paid until the commission said you don't have to pay anymore. And that's exactly what the code says they can do if they continue to pay. They can bring an action, they have it declared, they don't need to pay any further. That's exactly the petition they brought, isn't it? But, Justice, if once they find that Mr. Vorek has a serious injury and the commission finds that they've stipulated to the causal connection of that serious injury, how do we extricate them from that stipulation? Because I don't think they did stipulate to it. I appreciate that. But Commissioner Mason did write that the Respondent stipulated to causation. I don't care what she wrote. The fact of the matter is she also wrote that he wasn't credible. Right. And I've never heard of her finding a petitioner not credible in my life. This is the first time. But if we look for the reasons, and I don't want to reread them to you, but they're all related to issues that would be not relevant if the stipulation was, in fact, going to be binding. Thank you, Counsel. Thank you very much, Justice. Counsel, as a matter of opinion and advisement, written disposition shall issue. Thank you, panel. The Court will stand in brief recess.